# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

D.B., a minor, by his next friends,     )
ELIZABETH B. and DAVID B.,       )
                                     )
        Plaintiff,              )       Civil Action No.
                                     )       07-cv-40191-FDS
        v.                      )
                                     )
KIRSTEN ESPOSITO, CECILIA       )
DiBELLA, SUTTON SCHOOL DISTRICT,  )
and SUTTON SCHOOL COMMITTEE,    )
                                   )
        Defendants.           )
_____)


## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

**SAYLOR, J.**

This is an action concerning the provision of education to a disabled minor child. Plaintiff D.B. is a 14-year-old child who resides in Sutton, Massachusetts, and who suffers from a variety of disabilities that interfere with his ability to learn. D.B.'s parents have filed suit as next friends against defendants Kirsten Esposito, Cecilia DiBella, the Sutton School District, and the Sutton School District Committee.[1] The amended complaint, at present, contains nine counts: (1) disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794; (2) retaliation in violation of the Rehabilitation Act; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (4) retaliation in violation of the ADA; (5) disability discrimination in violation of 42 U.S.C. § 1983; (6) a "custom and usages" violation of

---

[1] Although D.B. himself is nominally the party in this action, the Court will refer to the family collectively as "plaintiffs."

§ 1983; (7) retaliation in violation of § 1983; (8) conspiracy in violation of 42 U.S.C. § 1985; and (9) violation of the Fourteenth Amendment.[2]

Defendants have moved for summary judgment on all counts. They have also moved to strike plaintiffs' opposition and two supporting affidavits. For the reasons that follow, the motion to strike will be denied and the motion for summary judgment will be granted.

# I. Background

The following is a summary of the significant facts.[3] Additional facts will be addressed in the analysis as necessary.

## A. Factual Background

Plaintiff D.B. was born in 1996. He resides with his parents (plaintiffs Elizabeth B. and David B.) in Sutton, Massachusetts. D.B. was a student in the Sutton public schools from September 2000 until March 2005.

Defendant Kirsten Esposito is the former Director of Special Education for the Sutton public schools. Defendant Cecilia DiBella is the Superintendent of Schools.

D.B. has been diagnosed with severe verbal apraxia and dysarthria. Verbal apraxia is a disorder of motor speech planning and programming in which the neurological signals between the brain and the speech-producing muscles are not transmitted effectively. As a result, a child with apraxia has difficulty learning how to produce and sequence sounds. Dysarthria is

---

[2] The complaint previously contained a count alleging a violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. (count 10). In addition to the Sutton defendants, that count named the Commonwealth of Massachusetts as a defendant. On September 30, 2009, the Court granted summary judgment to all defendants on the IDEA claim. Because the Commonwealth is not a defendant as to any of the nine remaining claims, it will be dismissed from the case.

[3] The complaint is voluminous; it is 48 pages long and contains 448 paragraphs of allegations.

characterized by hypotonia and muscle weakness. D.B. has dysarthria associated with his speech-producing muscles, which interferes with his ability to produce certain sounds.

D.B. was in the Sutton public schools for four-and-one-half years. Plaintiffs allege that during that period, teachers and administrators repeatedly failed to provide accommodations that would provide him with a free and appropriate public education ("FAPE"). They further allege that various administrators, including defendants Esposito and DiBella, were "combative and adversarial" and repeatedly failed to understand the full extent of D.B.'s disabilities. According to plaintiffs, defendants engaged in various acts of discrimination and retaliation.

In March 2005, Elizabeth and David removed D.B. from the Sutton public schools, contending that he was not receiving an appropriate education or making meaningful educational progress.

B.      **Procedural Background**

On March 1, 2005, defendants filed a hearing request with the state Board for Special Education Appeals ("BSEA"). Defendants asked the BSEA to conclude that (1) Elizabeth and David's proposed private educational program would not provide D.B. with FAPE, and (2) the educational program proposed by the Sutton defendants in February 2005 would provide D.B. with FAPE. Plaintiffs counterclaimed, asking the BSEA to conclude that the Sutton defendants had not provided D.B. with FAPE, and seeking reimbursement for their expenses in providing a private education.

After various meetings between the parties and several days of hearings, the BSEA concluded in March 2007 that the Sutton defendants' educational plan provided D.B. with FAPE. The BSEA also concluded that "Sutton is not obligated to fund [plaintiffs'] unilateral placement

3

and services, nor to place [D.B.] in [plaintiffs'] program prospectively on the basis of evidence now in the record."

Plaintiffs brought this action in Worcester Superior Court on June 7, 2007. The case was removed to this Court on July 13, 2007. On July 29, 2008, the Court dismissed three counts of the original complaint while permitting a limited amendment. Plaintiffs filed an amended complaint on September 10, 2008. The amended complaint contained ten counts: (1) disability discrimination in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; (3) disability discrimination in violation of the ADA; (4) retaliation in violation of the ADA; (5) disability discrimination in violation of 42 U.S.C. § 1983; (6) a "custom and usages" violation of § 1983; (7) retaliation in violation of § 1983; (8) conspiracy in violation of 42 U.S.C. § 1985; (9) violation of the Fourteenth Amendment; and (10) violation of the IDEA.

On September 30, 2009, the Court granted summary judgment to defendants on the IDEA claim. Defendants have filed a motion for summary judgment as to the remaining counts and a motion to strike plaintiffs' opposition and two related affidavits.

## II. **Motion to Strike**

Defendants' motion to strike has three components. They ask the Court to strike (1) plaintiffs' opposition to their motion for summary judgment in its entirety, on the ground that it violates Local Rule 56.1 because it does not include a separate statement of facts; (2) Elizabeth's affidavit, which they contend is at various points speculative, irrelevant, and based on hearsay; and (3) the affidavit of Marsha Chaskelson, which they contend is "impossible to properly analyze" in the absence of a Local Rule 56.1 statement of facts.

Defendants first ask the Court to strike the entirety of plaintiffs' opposition to the motion

for summary judgment. According to defendants, plaintiffs' opposition is deficient because it lacks a concise statement of material facts as to which there is a genuine dispute of material fact. *See* D. Mass. R. 56.1. This contention is without merit. Under Local Rule 56.1, a motion for summary judgment "shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation," and "[f]ailure to include such a statement constitutes grounds for denial of the motion." *Id.* Similarly, an opposition to a motion for summary judgment must also "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." *Id.* However, failure to include a statement of facts with an opposition is not grounds for *granting* the motion in favor of the moving party. *Id.*

But that is in essence what defendants request. Were the Court to strike the opposition in its entirety, it would have little choice but to grant summary judgment in favor of defendants. The Court is unwilling to take such a drastic step. In any event, although plaintiffs did not include a separate document with their version of the facts, the opposition counters defendants' factual statement with citations to the record. Ultimately, defendants have not shown sufficient prejudice to justify striking plaintiffs' opposition.

Second, defendants ask the Court to strike Elizabeth's affidavit because it contains speculative, irrelevant, and hearsay material. As to the first point, defendants contend that Elizabeth is unqualified to testify regarding D.B.'s diagnosis. The Court does not agree. While Elizabeth is not a doctor or a neuropsychologist, she is certainly qualified to testify as to her understanding of D.B.'s diagnoses and her personal knowledge of how those diagnoses have

5

affected him and their family. While she might not be able to testify as to the medical specifics of his conditions, she does not purport to do that in her affidavit. Rather, she merely conveys her understanding of D.B.'s diagnoses, her bases of knowledge for that understanding, and her personal knowledge of the effects of those conditions. It is hard to conceive of a witness more qualified to testify regarding D.B.'s needs and limitations than his mother, who confronts those needs and limitations on a daily basis.

Defendants contend that Elizabeth's "expectations, assumptions, and efforts" are irrelevant. But the statements to which they object are unremarkable and merely provide context for plaintiffs' claims. (*See, e.g.*, Elizabeth Aff. ¶ 10 ("As professional educators and therapists[,] I expected that [defendants] would be open to receiving . . . information [regarding D.B.'s disability] and that they would work with us as a team in furthering D.B.'s interests."); *id.* ¶ 11 ("I assumed that [defendants] would provide appropriate accommodations to deal with aspects of D.B.'s disability. . . .")).

As to their hearsay objection, defendants point to a single averment in the affidavit: "In the fall of 2004 Jennifer [Johnson] met me at the door of the school as I was preparing to bring DB into the school. She told me that [Kirsten] Esposito had decided that I would not go into the school, but would drop DB at the door." (*Id.* ¶ 25). This averment in fact contains double hearsay—a statement by Esposito relayed to Johnson recounted by Elizabeth—but appears nonetheless to be admissible. Under Fed. R. Evid. 801(d)(2)(D), both Johnson's and Esposito's statements are admissible as statements made by agents of the Sutton School District regarding matters within the scope of their employment. *See* Fed. R. Evid. 801(d)(2)(D) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's

agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."). At the time of the statements, Johnson was D.B.'s one-on-one aide and Esposito was the Director of Special Education. (Doc. 61-4, ¶¶ 14 & 17). And the statements concern matters within the scope of their employment—that is, their obligation to provide educational services to D.B.

Finally, defendants move to strike the affidavit of Marsha Chaskelson. This request, too, will be denied, because defendants have offered no reasoned basis for their motion. Their argument consists of two conclusory sentences, unsupported by any detail or explanation:

> Plaintiff's failure to provide a statement of facts that [sic] makes it impossible to properly analyze the affidavit of Marsha Chaskelson. See Exhibit D to Opposition. Nonetheless, it should be stricken to the extent that it contains hearsay, irrelevant material and material potentially inadmissible under a Daubert analysis.

(Defs.' Mot. to Strike at 3). Such summary assertions are plainly insufficient to justify a motion to strike.

Accordingly, and for the foregoing reasons, defendants' motion to strike will be denied.

## III.    Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this

determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

A.      **Counts 1, 3, 5, 6, and 8**

Defendants first seek summary judgment as to Counts 1, 3, 5, 6, and 8, contending that the Court's previous rulings necessarily preclude relief as to these counts.[4]  Specifically, they argue that the "underlying claim" in each of these counts is for violation of the IDEA, and because the Court granted summary judgment in favor of defendants on the IDEA claim, Counts 1, 3, 5, 6, and 8 must fail as well.  The Court agrees.

In *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13 (1st Cir. 2006), the First Circuit held that "where the essence of the claim is one stated under IDEA for denial of [free and appropriate public education], no greater remedies than those authorized by IDEA are made available by recasting the claim as one brought under 42 U.S.C. § 1983, Title II of the ADA, or section 504 of the Rehabilitation Act."  *Id.* at 19.  It further stated, "We hold that where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—*or any other federal statute for that matter*—in an attempt to evade the limited remedial structure of the IDEA."  *Id.* at 29 (emphasis added).

In ruling on a motion to dismiss the original complaint in this action, the Court found: "Even drawing all reasonable inferences in favor of the plaintiffs, it is clear that the 'underlying claim' in each of Counts 1, 3, 6, 7, and 9 [of the original complaint] is for violation of IDEA."

---

[4] Plaintiffs argue that the Court should strike defendants' motion because it was filed on February 8, 2010, instead of February 6, as required by the Court's scheduling order.  The Court does not agree.  February 6 was a Saturday, and under Fed. R. Civ. P. 6(a)(3)(A), defendants had until Monday, February 8, to file their motion.  In any event, even assuming the filing was untimely, plaintiffs have failed to show any prejudice.

(Doc. 21 at 7). The Court did not dismiss those counts, however, because *Diaz-Fonseca* was not about preemption. (*Id.* at 8). But it doubted whether those counts "serve[d] any practical purpose," and concluded that they were coextensive with plaintiffs' IDEA claim. (*Id.*).

Although dismissal may not have been warranted at the time of the ruling on the motion to dismiss, it is now. Counts 1, 3, 5, 6, and 8 of the amended complaint are identical to Counts 1, 3, 6, 7, and 9 of the original complaint. (*Compare* Doc. 24 ¶¶ 303-07, 311-15, 319-23, 324-25 & 329-30, *with* Doc. 1-2 – 1-4 ¶¶ 303-07, 311-15, 325-29, 330-31 & 335-36). Although they purport to be independent claims, it is clear they are coextensive with, based upon rights created by, and seek relief no different from, the IDEA claim. Put another way, the "underlying claim" in each of those counts is for an IDEA violation. *See Diaz-Fonseca*, 451 F.3d at 29. And in ruling on the cross-motions for partial summary judgment, the Court held that defendants had complied with the IDEA. Accordingly, because defendants violated no rights created by the IDEA, they are entitled to judgment on Counts 1, 3, 5, 6, and 8 of the amended complaint.

### B.     Counts 2 and 4

Counts 2 and 4 of the amended complaint allege unlawful retaliation in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the ADA, 42 U.S.C. § 12203(a).

The standard for retaliation claims under Section 504 is the same as the standard for retaliation claims under the ADA. *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010); *see Alston v. District of Columbia*, 561 F. Supp. 2d 29, 39 (D.D.C. 2008). Plaintiffs must first make a *prima facie* showing that they (1) engaged in protected activity, (2) were subjected to adverse action by the defendants, and (3) there is a causal connection between the adverse action and the protected activity. *Carreras v. Sajo, Garcia &*

*Partners*, 596 F.3d 25, 35 (1st Cir. 2010); *Alston*, 561 F. Supp. 2d at 40. As to the second component of this showing, "[t]he alleged retaliatory action must be material, producing a significant, not trivial, harm. Trivial actions such as petty slights, minor annoyances, and simple lack of good manners will not normally" be sufficient. *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006) (quotations and alterations omitted). An action is materially adverse only if "it well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Reinhardt*, 595 F.3d at 1133.

Once a *prima facie* showing has been made, a presumption of retaliation arises. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005). "[T]he burden [then] shifts to the [defendants] to articulate a legitimate, nondiscriminatory reason for [their] . . . decision." *Carreras*, 596 F.3d at 35 (quoting *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003)). In the face of such evidence, the burden then shifts back to plaintiffs to establish defendants' stated reason is a pretext for retaliation. *Id.* at 37. "Thus, the plaintiff[s] bear the ultimate burden to create a plausible inference that the [defendants] had a retaliatory motive." *Id.* at 36.

Here, plaintiffs point to a long list of alleged retaliatory actions in support of their claims.[5] After careful consideration, the Court concludes that defendants are entitled to summary judgment as to those claims. Many of plaintiffs' contentions are precluded by the First Circuit's decision in *Diaz-Fonseca*, in that plaintiffs are actually asserting a claim under the IDEA. Those that are not so precluded suffer from additional defects. In many cases plaintiffs have failed to provide sufficient evidence from which a reasonable jury could conclude that defendants' actions

---

[5] Plaintiffs list at least 25 separate alleged retaliatory actions in their complaint. (Doc. 24 ¶ 310). The Court will discuss only those addressed by the parties in their summary judgment papers.

were materially adverse, and in no case have plaintiffs provided sufficient evidence of pretext.[6] The Court will address the significant alleged retaliatory actions below.

### 1.    Access to the School

Plaintiffs first argue that Esposito retaliated against them by barring Elizabeth from entering the building when she brought D.B. to school in the mornings. (Compl. ¶ 310). Until mid-to-late 2004, it had been Elizabeth's normal practice to walk with D.B. from the school door to his cubby. (Elizabeth Aff. ¶ 23). That changed in the fall of 2004, when Jennifer Johnson (D.B.'s one-on-one aide) met Elizabeth at the door to the school and informed her that Esposito had decided that Elizabeth "would not go into the school, but would drop D.B. at the door." (*Id.* ¶ 25). According to Elizabeth, "Jennifer blocked my way and I would have had to physically push her aside if I had wanted to enter the school, which I believe would have been upsetting to D.B." (*Id.* ¶ 26). Elizabeth complied even though other parents were allowed to bring their children into the school. (*Id.* ¶ 27).

Even accepting that Elizabeth was barred from taking D.B. into the school when they arrived in the morning (as opposed to simply being asked to drop him off at the main entrance), plaintiffs do not have sufficient evidence that this conduct was motivated by a desire to retaliate. On August 24, 2004, Esposito wrote to plaintiffs in anticipation of the new school year. Regarding D.B.'s arrival at school, she stated:

> To summarize the specifics in the IEP and how daily routines will be implemented[,] I would like to take this opportunity to provide a few clarifications.
>
> Drop off – Pick up: Please drop [D.B.] off in the main entrance of the Early

---

[6] Defendants do not contest that plaintiffs engaged in protected conduct, nor do plaintiffs dispute that defendants have articulated legitimate, non-discriminatory reasons for their conduct.

> Learning Center and pick him up in the auditorium with the other families, as he
> will be walking with his class to be dismissed.

> Visitation: Please sign in at the office with each visit to support the school rules.

(AR at 4503). When plaintiffs complained that Elizabeth had no choice but to enter the school in

the mornings if no one was there to attend to D.B. when they arrived, (AR at 4529), Esposito

responded,

> [A]t no time was it ever indicated that [Elizabeth] was not wanted on the school
> premises. This comment I am to presume is taken out of context from [the August
> 24 letter]. Obviously, if [Elizabeth] believes no one is present to attend to [D.B.],
> I would appreciate immediate reporting to an administrator so the concern can be
> addressed at the moment before she leaves him at school.

(AR at 4531).

Plaintiffs have offered no evidence that suggests or would support an inference that

defendants' explanations were pretextual.[7] Esposito's statements were merely an attempt to

explain a policy with which plaintiffs subjectively disagreed. *See Carmona-Rivera*, 464 F.3d at 10

("The fact that Carmona was dissatisfied with the extent of many of the early accommodations

does not prove a retaliatory intent on the part of the defendants."). Indeed, even if some other

---

[7] Plaintiffs seek to infer retaliatory animus because much of the conduct about which they complain occurred *after* they had engaged in protected conduct – that is, after they questioned whether defendants were providing appropriate educational services to D.B. (*See* Doc. 61 at 4; Compl. ¶ 74-78). In the context of establishing a *prima facie* case of retaliation, a "[c]ausal connection may be established by producing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Reinhardt*, 595 F.3d at 1134 (quotation omitted). But when the analysis moves beyond the *prima facie* stage to the point where plaintiffs must satisfy their burden to show retaliatory animus, chronology alone is insufficient to support an inference of retaliatory animus. Were that not so, the requirement of proving intent would be eviscerated in any case where the alleged retaliatory conduct closely followed the protected activity. Therefore, to satisfy the requirements of intent, plaintiffs must produce evidence demonstrating that defendants' explanation for their conduct is unworthy of belief. *Id.* In the normal case, plaintiffs can meet this standard "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendants'] proffered legitimate reasons for [their] action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the [defendants] did not act for the asserted non-discriminatory reasons." *Id.* (quotation omitted).

parents entered the school in the morning with their children, plaintiffs have not explained how the apparent disparate treatment supports a finding of pretext. After all, the conduct plaintiffs complain of was devised for D.B. pursuant to an *individualized* education plan, which necessarily implies the some students will be treated differently than others. In that context in particular, plaintiffs must point to something more than subjective disagreement with disparate treatment to justify an inference of retaliatory intent. *Cf. Hoeppner v. Crotched Mountain Rehab. Ctr., Inc.*, 31 F.3d 9, 14 (1st Cir. 1994) ("Even in discriminatory discharge cases, where the plaintiff can rarely present direct, subjective evidence of an employer's actual motive, the plaintiff cannot survive summary judgment with unsupported allegations and speculations, but rather must point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus." (quotation omitted)).

## 2. <u>The Written Question Requirement</u>

Plaintiffs next contend that defendants required them to submit written questions in advance of parent-teacher meetings, and that this constitutes retaliation. (Compl. ¶ 310; Elizabeth Aff. ¶ 16). The record does not support this conclusory allegation. (Elizabeth Aff. ¶ 16). To the contrary, as Esposito explained in response to a letter from plaintiffs:

> Although you indicated again that you wished for all the noted participants [in the monthly clinic meetings] to be in attendance, you did not relate the issues or topics you wished to discuss. Given that this time is used to discuss strategies being used [to] bridge home and school, please provide us with the topics and/or questions you wish to discuss so that our providers can best utilize this time.

(AR at 2219). Plaintiffs point to no other evidence that such a requirement existed. In any event, that is hardly the language of a rigid and inflexible demand by school officials, and no reasonable

jury could conclude that it constituted a materially adverse action. No reasonable parent would have been dissuaded from advocating on behalf of her child because she was required to submit written topics and/or questions in advance of monthly meetings with multiple participants. *See Reinhardt*, 595 F.3d at 1133. This is particularly true where, as here, there is no allegation that defendants ever prohibited plaintiffs from asking questions during meetings.

### 3. The June 2005 Team Meeting

Plaintiffs next object to the manner in which defendants conducted the June 2005 team meeting. (Doc. 61 at 25). They contend that defendants failed to provide timely notice of the meeting and "blindside[d]" them by having the school district's attorney attend the meeting without prior notice. (Compl. ¶ 310). Specifically, plaintiffs contend that the meeting was conducted without their presence because they received notice *after* the meeting had already occurred. (Elizabeth Aff. ¶ 29).

These two allegations are insufficient to withstand defendants' motion for summary judgment. As to the first, plaintiffs have pointed to no evidence that defendants provided insufficient notice of the meeting in an effort to retaliate. Plaintiffs *assert* retaliation, but they point to no *facts* supporting such an inference beyond the "deficient" notice itself. Indeed, the most plaintiffs say in their opposition is that "Esposito's testimony is clear that she made little or no effort to ensure that Parents attended, or were even aware of, this meeting." (Doc. 61 at 25). That is a description of Esposito's conduct, not evidence of retaliatory animus.

As to the second allegation, no reasonable jury could conclude that counsel's presence at the team meeting was a materially adverse action *or* that it was intended as retaliation. Plaintiffs do not contend that the attorney said or did anything in the meeting to dissuade them from

advocating on behalf of D.B.  Moreover, plaintiffs have offered no reason to doubt defendants' explanation for counsel's presence at the meeting.  Because the meeting occurred after the commencement of the BSEA adversarial proceeding, it is hardly surprising that counsel attended.[8]

### 4.    The May 2006 Team Meeting

Plaintiffs also object to the manner in which the May 2006 team meeting was conducted. They contend that defendants' attorney led and dictated the terms of the meeting, that defendants refused to consider and to discuss new information regarding D.B. in a meaningful manner, that defendants wrongfully coached Jane Oleksyk (a speech/language pathologist), and that defendants improperly permitted their attorney to make decisions regarding D.B.'s educational program. (Compl. ¶ 310).  These allegations cannot form the basis of a retaliation claim because they are, in substance, challenges to defendants' provision of educational services as required by the IDEA. *See Diaz-Fonseca*, 451 F.3d at 29.  Indeed, they are based on alleged procedural deficiencies in defendants' educational services.  *See Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) ("The scope of a district court's inquiry into a state's compliance with the procedural requirements of the federal Act encompasses not only the substance of special education, *but also the adequacy of the process through which a particular IEP has been created*." (emphasis added)).  As defendants note and plaintiffs do not dispute, the May 2006 meeting was the subject of a separate hearing before the BSEA and is currently the basis of a case in Worcester Superior

---

[8] In a somewhat related argument, plaintiffs contend that defendants' request for a hearing before the BSEA was in and of itself a retaliatory act.  The Court does not agree.  Surely, a decision by defendants to vindicate their legal rights in the manner contemplated by the IDEA cannot be considered retaliatory, at least where defendants have a good-faith basis for pursuing their claims and are not engaged in vexatious litigation. And having previously concluded that defendants did not violate the IDEA, there is no basis to conclude that their request for a BSEA hearing was made in bad faith.

Court.

### 5. The Alleged Misrepresentations in D.B.'s Educational Files

Next, plaintiffs object to "Esposito's blatant misrepresentations on narrative purported to be descriptions of Team meetings that were erroneous and inaccurate and designed to make Parents appear derelict in their attention to D.B.'s interests and his educational needs." (Compl. ¶ 310; *see* AR at 2323-31). In making this allegation, plaintiffs appear to some extent to be contesting whether defendants provided D.B. with a free and appropriate public education, not whether they retaliated against plaintiffs for asserting their rights. *See Diaz-Fonseca*, 451 F.3d at 29. To the extent this is in actuality a challenge to the February 2005 IEP, the Court has already rejected it. (Doc. 51 at 19-21 & n.13). Assuming plaintiffs have properly asserted a retaliation claim, it nevertheless suffers from the same defect addressed repeatedly above: there is simply no evidence of retaliatory animus. Plaintiffs have offered no evidentiary basis from which a reasonable person could conclude that defendants' "descriptions of team meetings" reflected anything more than legitimate pedagogical differences between the parties as opposed to a desire to retaliate. Such pedagogical disputes are not suited to resolution by a federal court. (*Id.* at 16 (discussing the concern that "courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena")).

Plaintiffs also argue that defendants "maligned D.B. by labeling him 'mentally retarded' even though they were aware of evidence to the contrary." (Doc. 61 at 23). This contention appears to be one properly asserted through IDEA, not under the guise of a retaliation claim. Parents understandably and passionately defend D.B.'s cognitive potential. But if defendants have misdiagnosed D.B., that claim is properly resolved under the IDEA. Indeed, the case plaintiffs

rely upon stands for precisely that position. In *Draper v. Atlanta Independent School System*, the Eleventh Circuit affirmed the district court's decision that the school district had violated the IDEA. 518 F.3d 1275, 1279-80 (11th Cir. 2008). That decision was based in part on the school district's misdiagnosis of the student. *Id.* at 1287-90. In the words of the court, "The persistent refusal of the School System to acknowledge the substantial evidence of its misdiagnosis borders on incredible." *Id.* at 1288.

*Draper* is relevant to this case in a number of ways. If plaintiffs contend that defendants have misdiagnosed D.B., that challenge should be pursued under the IDEA. If plaintiffs contention is merely that defendants did not sufficiently consider evidence that they proffered, that is a procedural challenge to defendants' provision of a FAPE, which again is properly resolved in an IDEA case. Finally, any claim that defendants retaliated against plaintiffs by stigmatizing D.B. as "mentally retarded" depends upon a conclusion that defendants have misunderstood his cognitive potential. But as this Court has already concluded in ruling upon plaintiffs' IDEA claim, "Assessing D.B.'s capabilities presents a significant, perhaps impossible, challenge. . . . In the final analysis, D.B.'s 'potential' simply cannot be ascertained with any substantial degree of confidence." (Doc. 51 at 23, 26). For that reason, a reasonable jury could not conclude that defendants maligned D.B.'s capabilities in an effort to retaliate against plaintiffs.

### 6. References to David in D.B.'s Educational File

Plaintiffs also contend that defendants retaliated against them by including non-educational correspondence maligning David in D.B.'s educational file. (Doc. 61 at 7-8; Compl. ¶ 310). In particular, plaintiffs point to "Esposito's inclusion in D.B.'s educational file, for anyone who had access to that file to see, her allegations that David was guilty of [libel] and defamation, even

though she had removed any and all support for her allegation and only left her actual allegation providing no objective basis for any observer of the file to determine if her allegations had any substance or validity." (Compl. ¶ 310).

The correspondence to which plaintiffs refer is a March 7, 2005 e-mail from Esposito to Sutton's attorney, which Esposito wrote in response to a February 26, 2005 letter she received from David. In that letter, David stated:

> [A Sutton employee] implicitly called [Elizabeth] a liar when [Elizabeth] told her that [D.B.] was saying particular words in a natural environment outside the school setting. [The employee] didn't believe her, removed [D.B.] from his classroom and attempted to have [him] repeat the words on demand in a therapy room. Anyone with any knowledge of severe apraxia would know that a severely apraxic child would not deliver a word under pressure and on demand. Indeed, some people to whom we have related this incident have stated that this was child abuse.

(AR at 2329). Upon receiving the letter, Esposito redacted this paragraph, placed the letter in D.B.'s file, and sent the following e-mail to Sutton's attorney, which she also placed in D.B.'s file:

> I am writing in response to the letter dated February 26, 2005, specifically regarding the paragraph concerning one of the staff members. At this time, due to the defamatory and libelous statements suggested by [David] about the staff member, I have blacked out this paragraph and will not allow such remarks to be available in the file for all to read. In my opinion, such negativity and suggestive implications does [sic] not serve to the nature of the case [sic]. Although most of the letter is full of inaccurate perceptions and implicit and/or direct statements toward the Director, Team members, and the district, I will not disregard the letter in its entirety as the family shared it liberally. I have taken the steps to omit this paragraph from his Special Education file and wanted to inform you of this action for further legal advice.
>
> At this time, the paragraph on page 7 is covered and sealed.

(AR at 2334). Plaintiffs contend the inclusion of this e-mail in D.B.'s file alongside the February

letter was retaliatory because someone reading the file would have no basis to assess the e-mail's accuracy given the redaction in the letter. (Doc. 61 at 7).

This claim is without merit because plaintiffs have failed to cast doubt upon Esposito's explanation for her actions. According to Esposito, she redacted the letter to protect the employee from David's accusation, and wrote the e-mail to seek further advice of counsel. Plaintiffs have offered no reason to doubt this explanation. To the contrary, plaintiffs would infer retaliation from the mere inclusion of the e-mail alongside the letter in D.B.'s file. They assert, in conclusory fashion, that there is "no good explanation as to why Esposito' allegations should be in a student's file for anyone with access to that file to view." (Doc. 61 at 9 (footnote omitted)). That conclusion is anything but obvious, and in the absence of other evidence from which a jury could infer that Esposito's explanation was pretextual, it is not reasonable. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (summary judgment is appropriate when a plaintiff "fail[s] to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext" (citation omitted)).

### 7.    The Lindamood-Bell Program

In the fall of 2004, plaintiffs enrolled D.B. in the Lindamood-Bell program to support his reading and speech acquisition. In plaintiffs' view, D.B. made good progress under this program. Despite this progress, plaintiffs contend that defendants retaliated against them by refusing to employ the Lindamood-Bell program with D.B. even though it was highly appropriate for him and even though they were going to incorporate it in other aspects of Sutton's curriculum. (Doc. 61 at 24). In support of this argument, plaintiffs point to the narrative description of the June 22,

2005, team meeting. (*Id.* (citing AR at 4719)).

A fair reading of the record, however, does not support plaintiffs' contention. Far from concluding that Lindamood-Bell was "highly appropriate" for D.B., the team meeting description reveals that defendants concluded the opposite. The description states: "The Team noted that the follow-up testing in June[] 2005 that suggested . . . attentional progress was made since the initial testing, reflected [D.B.'s] familiarity with the test, rather than the results of instruction in the Lindamood Bell program." (AR at 4719). It concluded:

> Although in the pre-hearing conference the Director mentioned that training in the Lindamood program would be conducted with [D.B.] in mind, based on the findings in this report, training in Lindamood Bell does not seem warranted to address David's needs, although the district will pursue this type of instruction, just not specific to [D.B.] and not a part of his educational program.

(*Id.*). Thus, far from concluding that Lindamood-Bell was "highly appropriate" for D.B. and then, in an effort to retaliate against his parents, refusing to incorporate it his educational program, defendants concluded that the program was not educationally suited for D.B. (*Id.*; *see also* Doc. 51 at 35-35 n.26 (noting, in the Court's summary judgment ruling on the IDEA claim, that D.B.'s "post-Sutton progress has not been as consistent as plaintiffs seem to contend" and that, "[d]espite spending approximately a year and a half in the Lindamood-Bell program—a program that plaintiffs' witnesses all contend is the best fit for D.B.—by some accounts he had hardly progressed at all")). To the extent that plaintiffs are again challenging the legitimacy of defendants' pedagogical approach and their receptiveness to the Lindamood-Bell program, such a challenge is properly made by means of an IDEA claim. As for the alleged retaliation, plaintiffs' version of events is simply not supported by the record.

## 8. The Summary Program

Plaintiffs also contend that defendants retaliated against them by "sending . . . notification of Sutton's summer program more than one week after Esposito requested that it be returned to her." (Compl. ¶ 310). No reasonable jury could conclude that this constituted a materially adverse action. As defendants point out and plaintiffs do not contest, there is no evidence that D.B. was denied inclusion in a summer program due to the apparent error. Indeed, plaintiffs do not point to any harm that resulted from defendants' failure to provide timely notice of the summer program.

### 9.    DiBella's Failure to Reply to Plaintiffs' Letter

Finally, plaintiffs complain of retaliation by DiBella, the Superintendent of Sutton Public Schools. They contend that DiBella retaliated against them by failing to respond to a letter written by David on October 31, 2005. (Compl. ¶ 157-58; AR at 4630). No reasonable jury could find for plaintiffs based on this allegation because the failure to respond to a single letter, at least in this context, was not materially adverse; it would not have "dissuaded a reasonable [person] from making or supporting a charge of discrimination." *See Reinhardt*, 595 F.3d at 1133. In any event, plaintiffs point to no evidence, direct *or* circumstantial, from which a reasonable jury could infer that DiBella's failure to respond was motived by retaliatory animus.

### 10.    The Cumulative Effect of Defendants' Conduct

Even when considered cumulatively, the Court is not persuaded that sufficient evidence exists from which a reasonable jury could conclude that defendants retaliated against plaintiffs. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (providing that discrete and unactionable acts might together form the basis of a retaliation claim). As explained above, plaintiffs' allegations of retaliation suffer from a variety of defects, including a lack of evidence of

retaliatory animus. Aggregating the allegations into a single claim does not provide the necessary proof, even when considering the evidence (and the reasonable inferences to be drawn from them) in the light most favorable to plaintiffs.

### C.     Count 7

Count 7 is a claim under 42 U.S.C. § 1983 that defendants engaged in retaliation in violation of plaintiffs' rights under the First Amendment. Defendants are entitled to summary judgment on this claim as well. To the extent plaintiffs are actually asserting a violation of the IDEA (as described above), they cannot circumvent that limited remedial structure by bringing a claim under § 1983. *Diaz-Fonseca*, 451 F.3d at 29. To the extent that the conduct about which they complain might be actionable under § 1983, they have failed to provide sufficient evidence the defendants violated the Constitution, because no reasonable jury could conclude that defendants' motive was to chill plaintiffs' protected speech. *See Tarto v. Kervin*, 41 F.3d 9, 18 (1st Cir. 1994).[9]

### D.     Count 9

Finally, Count 9 is a § 1983 allegation that defendants violated the Fourteenth Amendment. In opposing defendants' motion for summary judgment, plaintiffs consent to dismissal of this claim. Accordingly, defendants are entitled to judgment on Count 9.

## IV.     Conclusion

At its core, this is, and always has been, a dispute about defendants' provision of

---

[9] Because the Court has concluded that no reasonable jury could find either statutory or constitutional retaliation, it need not consider plaintiffs' contention that the Sutton School District and the Sutton School Committee are vicariously liable for the conduct of their employees. And to the extent plaintiffs have asserted retaliation claims against the District and Committee directly, those claims fail for the same reasons as those discussed above.

educational services to a disabled child.  The record documents a longstanding dispute between,

on the one hand, a pair of concerned and dedicated parents and, on the other, a small school

district struggling in good faith to live up to its enormous responsibilities.  Not surprisingly, that

conflict has often provoked strong emotional responses, particularly on the part of the parents.

But as to the February 2005 IEP, the Court has already concluded that defendants met their

statutory obligations.  As for what remains in this case, while plaintiffs' passion for their son is

understandable and commendable, they have not provided sufficient evidence from which a

reasonable jury could conclude that defendants engaged in unlawful retaliation.

For the foregoing reasons, defendants' motion to strike is DENIED and defendants'

motion for summary judgment is GRANTED.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  September 10, 2010